DECISION.
{¶ 1} Defendant-appellant, Jesus Ramirez, appeals a conviction for domestic violence under R.C. 2919.25 relating to the stabbing of his girlfriend, Sandra Tucker. We find no merit in his two assignments of error, and we affirm his conviction.
 {¶ 2} In his first assignment of error, he states that the trial court erred in denying his Crim.R. 29(A) motion for a judgment of acquittal. He argues that the state failed to present sufficient evidence that he and the victim were living together as spouses. This assignment of error is not well taken.
 {¶ 3} R.C. 2919.25 provides that "[n]o person shall knowingly cause or attempt to cause physical harm to a family or household member." One definition of the term "family or household member" is "[a] spouse, or a person living as a spouse, or a former spouse" who "is residing or has resided with the offender[.]"[1] A "person living as a spouse" is "a person who is living or has lived with the offender in a common law marital relationship, who otherwise is cohabiting with the offender, or who has otherwise cohabited with the offender within five years prior to the date of the alleged commission of the act in question."[2]
 {¶ 4} The Ohio Supreme Court has stated that the essential elements of cohabitation are (1) sharing of familial or financial responsibilities and (2) consortium.[3] The circumstances of each case are unique, and, generally, the trier of fact should decide the issue of cohabitation.[4] When determining the victim/offender relationship, courts "should be guided by common sense and ordinary human experience."[5]
 {¶ 5} In this case, Tucker testified that Ramirez was her boyfriend, that they lived together at the time of offense, and that she had given birth to his child shortly after the offense occurred. This evidence was sufficient to show cohabitation and that Tucker was a person living as a spouse.[6]
 {¶ 6} This case differs from State v. Cobb,[7] on which Ramirez relies. In that case, the victim testified that she and the defendant lived together, but on cross-examination, she acknowledged that she was married to someone else, that the defendant had never moved in any of his belongings, and that he maintained his own apartment.[8] We held that reasonable minds could not have reasonably concluded that the relationship between the victim and the defendant involved cohabitation. We stated that "[a]t most there was a sporadic provision of money and conjugal relations."[9]
 {¶ 7} Thus, in Cobb, the victim's testimony showed only a dating relationship. In the present case, Tucker's testimony showed that the parties lived together as spouses. While Ramirez testified otherwise, the issue was one of credibility, and matters as to the credibility of evidence are for the trier of fact to decide.[10]
 {¶ 8} Under Crim.R. 29(A), a court shall not order the entry of a judgment of acquittal if the evidence is such that reasonable minds can reach different conclusions as to whether each material element of a crime has been proved beyond a reasonable doubt.[11] We hold that reasonable minds could have differed as to whether Tucker was a person living as a spouse, and that the issue was for the jury to decide. Consequently, the trial court did not err in overruling Ramirez's motion for a judgment of acquittal, and we overrule his first assignment of error.
 {¶ 9} In his second assignment of error, Ramirez states that his conviction was unconstitutional. He argues that Section 11, Article XV, of the Ohio Constitution, the Defense of Marriage Amendment, prevents a conviction if the state alleges that the parties are unmarried but living as spouses. This assignment of error is not well taken.
 {¶ 10} We begin by noting that legislative enactments enjoy a presumption of constitutionality.[12] Courts must uphold, if at all possible, a statute alleged to be unconstitutional and liberally construe it to save it from constitutional infirmities.[13] The challenging party bears the burden to show that the legislation is unconstitutional.[14]
 {¶ 11} On November 2, 2004, the voters of the state of Ohio approved the Defense of Marriage Amendment to the Ohio Constitution, which is set forth in Section 11, Article XV of the Ohio Constitution. It became effective on December 2, 2004.[15] It provides that "[o]nly a union between one man and one woman may be a marriage valid in or recognized by this state and its political subdivisions. This state and its political subdivisions shall not create or recognize a legal status for relationships of unmarried individuals that intends to approximate the design, qualities, significance or effect of marriage."
 {¶ 12} Several other appellate districts have already ruled upon the effect of this amendment on the domestic-violence statute. Most have held that R.C. 2919.25 is not in conflict with the Defense of Marriage Amendment. Some have reasoned that the amendment's intent is to prohibit same-sex marriage and does not apply to the domestic-violence statute.[16] Others have stated that the domestic-violence statute does not violate the plain language of the amendment because it does not create a legal status for unmarried cohabiting individuals, or that any status it does create does not approximate the design, qualities, significance, or effect of marriage.[17] A minority of courts have held that the plain language of the Defense of Marriage Amendment renders R.C. 2919.25 unconstitutional as applied to cohabitants.[18]
 {¶ 13} The Ohio Supreme Court has allowed a discretionary appeal and will decide the issue in the near future.[19]
But until that time, we must decide the issue for cases in this district. We agree with those cases that have held that the domestic-violence statute does not create a legal status that approximates the design, qualities, significance, or effect of marriage. Therefore, we join those districts that have held that R.C. 2919.25 does not violate the Defense of Marriage Amendment.
 {¶ 14} The domestic-violence statute is narrow. It defines the conduct that constitutes the crime of domestic violence, setting forth categories of individuals considered potential victims, including unmarried individuals who cohabit.[20]
"Although the circumstances attending cohabitation may resemble marriage, the protection granted by R.C. 2919.25 is only the recognition that people do, in fact, live together as if they were married, and sadly, commit violence upon each other, and thus require special attention."[21]
 {¶ 15} The statute "does not permit unmarried individuals to enter into a legally binding, marriage-like relationship with each other. It does not give an unmarried individual the right to inherit from an intestate cohabitant, the right to make medical decisions on a cohabitant's behalf, the right to file a joint tax return with a cohabitant, or any other of the host of rights associated with marriage."[22]
 {¶ 16} Consequently, we hold that Ramirez has not overcome the presumption of constitutionality that the domestic-violence statute enjoys. We overrule his second assignment of error and affirm his conviction.
Judgment affirmed.
Painter, P.J., and Hendon, J., concur.
Winkler, retired, from the First Appellate District, sitting by assignment.
[1] R.C. 2919.25(F)(1)(a)(i).
[2] R.C. 2919.25(F)(2).
[3] State v. Williams, 79 Ohio St.3d 459, 1997-Ohio-79,683 N.E.2d 1126, paragraph two of the syllabus.
[4] Id. at 465, 1997-Ohio-79, 683 N.E.2d 1126; State v.Logsdon, 3rd Dist. No. 13-05-29, 2006-Ohio-2938, ¶ 21.
[5] State v. Rodriguez, 6th Dist. No. H-05-020,2006-Ohio-3378, ¶ 25.
[6] See Uhrichsville v. Losey, 5th Dist. No. 2005 AP 030028,2005-Ohio-6564, ¶ 15-27; State v. Williams, 5th Dist. No. 2002CA00428, 2003-Ohio-6143, ¶ 50-56; State v. Wagner (Aug. 11, 1993), 9th Dist. No. 2205.
[7] 153 Ohio App.3d 541, 2003-Ohio-3821, 795 N.E.2d 73.
[8] Id. at ¶ 5.
[9] Id. at ¶ 6.
[10] State v. Bryan, 101 Ohio St.3d 272, 2004-Ohio-971,804 N.E.2d 433, ¶ 116; State v. Burrell, 1st Dist. No. C-030803,2005-Ohio-34, ¶ 28.
[11] State v. Bridgeman (1978), 55 Ohio St.2d 261,381 N.E.2d 184, syllabus; State v. James, 1st Dist. Nos. C-040376 and C-040389, 2006-Ohio-2478, ¶ 36.
[12] State v. Collier (1991), 62 Ohio St.3d 267, 269,581 N.E.2d 552; State v. Tarbay, 157 Ohio App.3d 261,2004-Ohio-2721, 810 N.E.2d 979, ¶ 7.
[13] Woods v. Telb, 89 Ohio St.3d 504, 516, 2000-Ohio-171,733 N.E.2d 1103; State v. Dorso (1983), 4 Ohio St.3d 60, 61,446 N.E.2d 449; State v. Carswell, 12th Dist. No. CA2005-04-47,2005-Ohio-6547, ¶ 7.
[14] Woods, supra, at 516, 2000-Ohio-171, 733 N.E.2d 1103;Carswell, supra, at ¶ 7; State v. Pickett, 1st Dist. No. C-000424, 2001-Ohio-4022.
[15] Logsdon, supra, at ¶ 15; State v. Rodgers,131 Ohio Misc.2d 1, 2005-Ohio-1730, 827 N.E.2d 872, ¶ 15.
[16] Rodriguez, supra, at ¶ 10 and 14; State v. Nixon,165 Ohio App.3d 178, 2006-Ohio-72, 845 N.E.2d 544, ¶ 14-15; State v.Newell, 5th Dist. No. 2004CA00264, 2005-Ohio-2848, ¶ 43.
[17] Rodriguez, supra, at ¶ 10, 20 and 31-34; Gough v.Triner, 7th Dist. No. 05 CO 33, 2006-Ohio-3522, ¶ 163-2; Statev. Rodgers, 166 Ohio App.3d 218, 2006-Ohio-1528, 850 N.E.2d 90, ¶ 15-18; Nixon, supra, at ¶ 13; Carswell, supra, at ¶ 17-20.
[18] Rodriquez, supra, at ¶ 10; Logsdon, supra, at ¶ 18-28;State v. Ward, 166 Ohio App.3d 188, 2006-Ohio-1407,849 N.E.2d 1076, ¶ 19-36.
[19] State v. Carswell, 109 Ohio St.3d 1423, 2006-Ohio-1967,846 N.E.2d 533.
[20] Carswell, supra, at ¶ 18.
[21] Rodriguez, supra, at ¶ 33.
[22] Carswell, supra, at ¶ 19.