[Cite as *In re J.G.*, 2013-Ohio-583.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
No.   98625

## IN RE:   J.G.

## A MINOR CHILD

**JUDGMENT:**
AFFIRMED

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Juvenile Division
Case No. DL 12104897

**BEFORE:**   Boyle, P.J., Celebrezze, J., and Keough, J.

**RELEASED AND JOURNALIZED:**   February 21, 2013

**ATTORNEYS FOR APPELLANT**

Timothy Young
State Public Defender
BY:    Brooke M. Burns
Assistant State Public Defender
250 East Broad Street
Suite 1400
Columbus, Ohio    43215

**ATTORNEYS FOR APPELLEE**

Timothy J. McGinty
Cuyahoga County Prosecutor
BY:    Callista Plemel
Assistant County Prosecutor
Justice Center, 8th Floor
1200 Ontario Street
Cleveland, Ohio    44113

MARY J. BOYLE, P.J.:

{¶1} Defendant-appellant J.G., a juvenile, appeals the trial court's judgment ordering him to pay restitution to the victim. He raises two assignments of error for our review:

> 1. The juvenile court committed plain error when it ordered that J.G. pay $15,502 in restitution without considering community service in lieu of financial sanctions.
>
> 2. Trial counsel rendered ineffective assistance by failing to object to the juvenile court's imposition of restitution.

{¶2} Finding no merit to his appeal, we affirm.

<u>Procedural History and Factual Background</u>

{¶3} In March 2012, the state filed a complaint against J.G. alleging one count of felonious assault, with one- and three-year firearm specifications. J.G. denied the allegation.

{¶4} With an agreement that J.G. would be committed to the Ohio Department of Youth Services for a minimum of at least one year up to a maximum of the time J.G. reached the age of 21, the state withdrew the three-year firearm specification, and J.G. admitted that he committed felonious assault with the one-year firearm specification.

{¶5} At the plea hearing before J.G. entered into his plea, the court stated to J.G., "[t]he court can order that you pay a fine, restitution, or court costs. Do you know what restitution is?" J.G. responded that he did not. The court explained, "[r]estitution is where you pay back the victim for any expenses they have as a result of the offense." The court then asked if there was restitution in the matter. The state

responded that there was and stated that it was "quite a bit." The state informed the court that the victim was present but did not want to speak. The state told the court that it had copies of the victim's medical bills, which totaled over $15,000. The state explained that the victim did not have medical insurance. The state further informed the court that the victim was requesting lost wages as well. The court then asked J.G. if he understood that it could order him to pay the victim's medical bills. J.G. responded that he understood.

{¶6} After J.G. admitted that he committed felonious assault and admitted the one-year gun specification, the court found him to be delinquent and proceeded to disposition. J.G. explained to the court that he went to the victim's house with the victim's nephew. J.G. said that he was carrying a gun for protection. When he got to the victim's house, he placed the gun in an abandoned house next door. He then got into an argument with the victim. He retrieved his gun at the abandoned house, went back to the victim's house, and shot the victim in the leg. J.G. said that he carried a gun despite the fact that he was on probation from an earlier case.

{¶7} The court explained to J.G. that he "was on the hook" for the victim's medical bills. J.G. responded that the victim provoked him. The court replied that it did not matter.

{¶8} The court proceeded to disposition immediately following the plea hearing. It ordered that J.G. be committed to the Ohio Department of Youth Services for a minimum of one year, up to a maximum term of J.G.'s 21st birthday. The court elected

not to impose time on the one-year gun specification. The court then asked to see the victim's medical bills (copies of the medical bills are included in the record), reviewed them, and ordered that J.G. be responsible for them, for a total amount of $15,502 in restitution. The court refused to impose restitution for the victim's lost wages because it "had no way of quantifying" the wages (the state did not provide any proof of lost wages, nor did the victim testify as to his lost wages).

Restitution

{¶9} In his first assignment of error, J.G. argues that because he is indigent, the trial court erred when it ordered him to pay restitution without first considering whether to impose community service in lieu of restitution.

{¶10} J.G. did not object to the trial court's imposition of restitution, and thus, we review for plain error. Under Crim.R. 52(B), plain errors affecting substantial rights may be noticed by an appellate court even though they were not brought to the attention of the trial court. To constitute plain error, there must be: (1) an error, i.e., a deviation from a legal rule, (2) that is plain or obvious, and (3) that affected substantial rights, i.e., affected the outcome of the case. *State v. Barnes*, 94 Ohio St.3d 21, 27, 759 N.E.2d 1240 (2002). Even if error satisfies these prongs, appellate courts are not required to correct the error. Courts are to notice plain error under Crim.R. 52(B), "'with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice.'" *Id.*

{¶11} The rules governing the disposition of children adjudicated delinquent are contained primarily in R.C. Chapter 2152. When a child is adjudicated delinquent, R.C. 2152.20 provides that the court may impose any of the following financial sanctions: a fine, restitution, court costs (including court-appointed counsel fees under Juv.R. 4), or require the child to reimburse any or all of the costs incurred for services provided or sanctions imposed. R.C. Chapter 2152 does not explicitly require the court to make the determination that an indigent child has the means to pay a financial sanction imposed. It does state that the court "*may* hold a hearing if necessary to determine whether a child is able to pay a sanction" imposed. (Emphasis added.) R.C. 2152.20(C). But the statute does not require the court to hold a hearing. *Id.*

{¶12} R.C. 2152.20(D) further provides that "if the child is indigent, the court *shall consider* imposing a term of community service * * * in lieu of imposing a financial sanction * * *." (Emphasis added.) R.C. 2152.20(D) does not, however, require the court to impose a term of community service in lieu of a financial sanction if a juvenile is indigent; it simply indicates that the court must consider it. Although a court must consider imposing community service in lieu of a financial sanction, there is nothing in the statute that requires a court to state this consideration on the record.

{¶13} Other appellate districts have addressed this exact issue, i.e., does the trial court err when the record is silent as to whether it considered imposing community service in lieu of a financial sanction. These districts have held that although R.C. 2152.20(D) requires a court to "consider imposing a term of community service" when a

juvenile is indigent, a trial court does not violate this provision if there is nothing in the record to demonstrate that the court did not consider it. *See In re Boss B.*, 6th Dist. No. L-07-1343, 2008-Ohio-2995, ¶ 22; *In re Cory P.*, 5th Dist. No. 2012 AP 02 0016, 2012-Ohio-5453; *In re C.P.*, 9th Dist. Nos. 04CA008534 and 04CA008535, 2005-Ohio-1819; *In re M.A.L.*, 2d Dist. No. 06-CA-36, 2007-Ohio-2426. *But see In re J.W.*, 12th Dist. Nos. CA2004-02-036 and CA2004-03-061, 2004-Ohio-7139 (sustained juvenile-appellant's argument when there was nothing in the record to indicate that the trial court considered imposing community service before imposing a financial sanction).

{¶14} J.G. and the state present arguments regarding whether the trial court knew or should have known that J.G. was indigent. J.G. argues that the trial court should have presumed he was indigent, citing to Ohio Adm.Code 120-1-03(C)(5). This administrative code provision, however, expressly states that juveniles are presumed indigent for purposes of determining whether to appoint counsel for the juvenile. J.G. had a court-appointed attorney. The state is correct, however, that (at least for adult criminal defendants) some courts have held that determining indigency for purposes of receiving court-appointed counsel is "not necessarily indigency for purposes of determining ability to pay a fine." *See State v. Johnson*, 107 Ohio App.3d 723, 728, 669 N.E.2d 483 (8th Dist.1995). Though some courts have held that when a juvenile has appointed counsel, it is sufficient to apprise the court at sentencing that the juvenile is indigent for purposes of imposing financial sanctions. *See In re Cory P.*, *supra*, at ¶ 83;

*State v. Clark*, 4th Dist. No. 02CA12, 2002-Ohio-6684, *overruled on other grounds*, *State v. White*, 103 Ohio St.3d 580, 2004-Ohio-5989, 817 N.E.2d 393, ¶ 20-21.

{¶15} We agree with the court in *In re Cory P*. and *Clark*, namely, that if a juvenile is indigent for purposes of appointed counsel, he or she is indigent for purposes of imposing financial sanctions. Even finding J.G. to be indigent, however, we find no error on the part of the trial court. This is because the statute does not require the court to impose community service for an indigent juvenile, nor does it even require the court to state on the record that it considered imposing community service in lieu of restitution for an indigent juvenile.

{¶16} A review of the record here indicates that the trial court was well aware of the facts of the case, namely, that J.G. shot the victim in the leg, that the victim did not have medical insurance, and that the victim incurred over $15,000 in medical bills as a result of being shot by J.G. The court was well within its discretion to impose restitution to the victim for J.G.'s senseless act.

{¶17} J.G. argues that because the trial court immediately proceeded to disposition after he entered into his plea, this court should infer that the trial court did not consider imposing community service in lieu of restitution. We disagree. The trial court had presided over the case for three months at the time J.G. entered into his plea; it was very familiar with the case. If the trial court had scheduled disposition for a different date, that would not change our analysis.

**{¶18}** J.G. further cites to *State v. Morris*, 8th Dist. No. 92080, 2009-Ohio-4711, in support of his argument. In *Morris*, the statute at issue was R.C. 2929.18(B)(6), which states that before ordering restitution as a part of a criminal sentence for an adult offender, the court must "consider the offender's present or future ability to pay." J.G. argues that "the trial court's failure to comply with R.C. 2152.20(D) is analogous to the failure of a common pleas court to consider an adult defendant's present and future ability to pay prior to imposing restitution" under R.C. 2929.18(B)(6). Just as with R.C. 2152.20(D), there is nothing in the adult restitution statute that requires the court to hold a hearing to make this determination, or make a specific finding that the offender has the ability to pay. *Morris* at ¶13.

**{¶19}** In *Morris*, a majority of this court found that the trial court failed to determine the defendant's ability to pay restitution — despite the fact that the adult restitution statute does not require the court to make a specific finding on the record regarding a defendant's ability to pay. *Id.* at ¶ 13. Assuming for the sake of argument that we can say that R.C. 2929.18(B)(6) and 2152.20(D) are analogous, we find *Morris* to be distinguishable on the facts. In *Morris*, we found that the trial court erred by ordering restitution because — based on the record before us in that case — the defendant "appear[ed] to lack the present and future ability to pay." *Id.* at ¶ 16 (this was because defense counsel had informed the court that the defendant was "older and with disabilities," had substantial leg and back injuries, was applying for SSI, was "living

hand to mouth," and might have psychological issues). In contrast, on the record before us in this case, there is no such similar indication.

{¶20} Accordingly, we find no error on the part of the trial court — plain or otherwise.

{¶21} J.G.'s first assignment of error is overruled.

## Ineffective Assistance of Counsel

{¶22} In his second assignment of error, J.G. argues that his trial counsel was ineffective for failing to object to the trial court's imposition of restitution. An accused juvenile has a constitutional right to counsel and the same rights to effective assistance of counsel as an adult criminal defendant. *In re Gault*, 387 U.S. 1, 41, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967). Reversal of a conviction for ineffective assistance of counsel requires a defendant to show that (1) counsel's performance was deficient, and (2) the deficient performance prejudiced the defense. *State v. Smith*, 89 Ohio St.3d 323, 327, 731 N.E.2d 645 (2000), citing *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Defense counsel's performance must fall below an objective standard of reasonableness to be deficient in terms of ineffective assistance of counsel. *See State v. Bradley*, 42 Ohio St.3d 136, 142, 538 N.E.2d 373 (1989). Moreover, the defendant must show that there exists a reasonable probability that, were it not for counsel's errors, the results of the proceeding would have been different. *State v. White*, 82 Ohio St.3d 16, 23, 693 N.E.2d 772 (1998).

{¶23} As we discussed in our analysis of J.G.'s first assignment of error, the trial court was not required to hold a hearing to determine J.G.'s ability to pay restitution, nor was it required to impose community service in lieu of restitution; the court was merely required to consider it. Thus, J.G. has not established the second prong of the ineffective assistance of counsel test, i.e., that there exists a reasonable probability that, if his counsel had objected to the imposition of restitution, that the outcome would be different. *See In re Davis*, 5th Dist. No. 06CA163, 2007-Ohio-6994 (no deficient performance when trial counsel did not object to the trial court's failure to consider community service in lieu of those sanctions because trial court was not required to conduct a separate hearing to determine appellant's ability to pay, and statute did not mandate community service in lieu of financial sanction for indigent defendants). Stated differently, the most J.G. can establish here is that if his counsel had objected to the imposition of restitution, the trial court may have imposed community service, may have imposed restitution, or may not have imposed either. This does not amount to a "reasonable probability" that the outcome would have been different had J.G.'s trial counsel objected. Indeed, it is just as likely that the trial court would have still imposed restitution.

{¶24} Accordingly, we overrule J.G.'s second assignment of error.

{¶25} Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
MARY J. BOYLE, PRESIDING JUDGE

FRANK D. CELEBREZZE, JR., J., and
KATHLEEN ANN KEOUGH, J., CONCUR